**Brandon Demond THOMAS, Appellant**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 14–08–00207–CR, 14–08–00212–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 15, 2009.

J. Sidney Crowley, Houston, TX, for appellants.

John Harrity, Richmond, TX, for State.

Panel consists of Justice SEYMORE and Justices BROWN and SULLIVAN.

## OPINION

JEFFREY V. BROWN, Justice.

Appellant Brandon Demond Thomas was convicted of aggravated robbery in two causes and sentenced to fifty years' confinement in the Institutional Division of the Texas Department of Criminal Justice in each case to run concurrently. In his sole issue on appeal, Thomas contends the trial court reversibly erred in overruling his motion to suppress evidence. We affirm.

### I

On the evening of February 2, 2007, a group of people had just left the Los Flores restaurant in Fulshear when several men robbed them at gunpoint. Deputy Julie Delgado, a patrol officer, was dispatched to the scene at 9:08 p.m. Another officer, Deputy Schmidt, informed her that there were five to seven suspects, who were black or Hispanic males, wearing dark or black clothing, and one of them had bright red shoes. Delgado began walking the area with one of the victims looking for items, including cash, that had been stolen. Another officer, Deputy Larry Gammon, accompanied them in his patrol car. Just after 10:00 p.m., Delgado and Gammon saw two black males walking together about a block from the location where the robbery occurred. One of the males was wearing bright red shoes, and the other was wearing black pants, black

shoes, and a white shirt like an undershirt. The man wearing the red shoes was later identified as Michael Trevino, and the man with him was Thomas, the appellant.

Because Delgado knew that the robbers had been armed, she patted the two men down but found no weapons. The men told her that they were going to the store to buy chips. Thomas did not have a wallet, so Delgado asked him how he was going to buy chips if he did not have any money. He turned to show her his pocket, and said, "Look, I've got money." Delgado perceived Thomas's body movement and invitation to "look" to be permission to look in his pocket, so she checked his pocket and found several hundred-dollar bills. Knowing that the robbers had stolen cash from the victims, Delgado became suspicious and asked Thomas what he did for a living. Thomas responded that he was unemployed and his girlfriend gave him the money. Delgado then detained Thomas until a K–9 unit could arrive. While they were waiting, Thomas complained that he was cold and so Delgado allowed him to sit in a patrol car with the heater on. Thomas was not handcuffed or under arrest at that time, but he was not free to leave.

Deputy Gammon took scent samples from Thomas and Trevino along with samples from the bills that had been recovered from them. Deputy Keith Pikett, a bloodhound handler with the Fort Bend County Sheriff's Department, arrived with three of his dogs. Gammon gave Pikett the scent pads he had collected and Pikett took additional scent samples from the victims. The dogs' reactions to the money and the victims' scent pads indicated that the money found on Thomas was taken from at least one of the victims. A detective was called to the scene and he arrested Thomas. Sometime later, after Thomas was read his *Miranda* warnings, he gave a

videotaped statement that was later admitted into evidence at trial over his objection. From their interview of Thomas, the police learned that he had driven Trevino and several others to the area where the robbery took place in a car belonging to his girlfriend. Inside the car, the police found a black flight jacket, a black hooded jacket, gloves, a black wave cap, Thomas's social security card, and two wallets belonging to the robbery victims.

## II

Thomas contends that he was detained, searched, and arrested on insufficient probable cause, and that the evidence used to convict him, specifically his possession of the victims' money, the bloodhound evidence, and his statement, were obtained as a result of an illegal search.

## A

We review a trial court's ruling on a motion to suppress under an abuse-of-discretion standard. *Swain v. State,* 181 S.W.3d 359, 365 (Tex.Crim.App.2005). We give almost total deference to the trial court's determination of historical facts, but review de novo the trial court's application of the of the law to these facts. *State v. Ross,* 32 S.W.3d 853, 856 (Tex. Crim.App.2000). When, as here, the trial court makes no findings of fact, we review the evidence in the light most favorable to the trial court's ruling and assume that the record supports the trial court's implicit fact findings. *Carmouche v. State,* 10 S.W.3d 323, 327–28 (Tex.Crim.App.2000). If the trial court's ruling is reasonably supported by the record and is correct on any theory of law applicable to the case, we must sustain it on review. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App. 1996).

In reviewing the trial court's ruling, we generally consider only the evi-

dence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced after the hearing. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex.Crim.App.2007); *Rachal v. State*, 917 S.W.2d 799, 809 (Tex.Crim.App.1996). But when the parties later relitigate the suppression issue at the trial on the merits, we consider all evidence, from both the pre-trial hearing and the trial, in our review of the trial court's determination. *Gutierrez*, 221 S.W.3d at 687. Here, the trial judge held a hearing on Thomas's motion to suppress, and at the conclusion of the hearing, he denied the motion. At trial, the parties relitigated the search-and-seizure issue by examining and cross-examining Officer Delgado and Michael Muskarella, Jr., one of the complainants, as they had during the hearing on the motion to suppress. Additional evidence was also adduced on the issue from other officers and the victims of the robbery. Therefore, we will consider the evidence presented at both the suppression hearing and the trial.

### B

Thomas first contends that there was insufficient probable cause for his detention and arrest because the description Delgado had of the robbers—that they were five to seven black or Hispanic males wearing all dark clothing with one wearing red shoes—was insufficient to justify detention or arrest. Thomas argues that the only part of the description he satisfied was that he was a black male in close proximity to the robbery scene one hour later, and his clothing did not match the description because he was wearing a white shirt. He also asserts that the victims appeared unsure of the race of the robbers and none gave any height, weight, or other distinguishing factors. Further, Thomas notes that he was not committing any crime when Delgado approached him and he was unarmed.

A police officer must have reasonable suspicion of criminal activity to begin an investigative detention. *See Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Woods v. State,* 956 S.W.2d 33, 35 (Tex.Crim.App.1997). We determine the reasonableness of an investigative detention by examining the totality of the circumstances. *Woods,* 956 S.W.2d at 38. A police officer may stop and briefly detain a person for investigatory purposes if the officer has a reasonable suspicion supported by articulable facts that the person detained is, has been, or soon will be engaged in criminal activity. *Id.* Whether a detention is reasonable under the totality of the circumstances turns on the content and reliability of the information the officer possesses. *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

Thomas contends that this case is akin to *Faulk v. State,* 574 S.W.2d 764 (Tex.Crim.App.1978). In that case, a young, black male wearing a multicolored shirt committed an armed robbery and then fled on foot. *Id.* at 765. The court held that an officer who stopped the defendant's car shortly after the armed robbery and removed him from the car at gunpoint did not have reasonable suspicion or probable cause to stop the defendant on the basis of a description of the robber as a young, black male and furtive gestures he made as the officer followed him. *Id.* at 766. The court determined that the only fact connecting the defendant to the robbery was that he was a young, black male. *Id.*

■ But Thomas's argument fails to appreciate all of the facts Deputy Delgado knew when she stopped Thomas. Here, Delgado had several articulable facts that under the circumstances supported a reasonable suspicion that Thomas was in-

volved in some criminal activity. Thomas and Trevino fit the description the victims gave: black or Hispanic males in dark or black clothing, one of whom was wearing bright red shoes. And the two were seen within one hour of the robbery near the location where it occurred. *Faulk* is distinguishable because Delgado was able to match considerably more than a single aspect of the robbers' physical description.

Moreover, Thomas's contention that he did not match the description given because he had on a white shirt is not persuasive. Michael Muskarella, one of the complainants, testified that the robbers wore large, bulky clothing, including hooded jackets or bandanas to cover their faces. Likewise, Deputy Gammon recalled at trial that the suspects were described as wearing bandanas or hooded jackets. The robbery occurred in February, and there was testimony that it was cold outside, so Delgado could have reasonably determined that Thomas had removed his jacket earlier to evade identification. This conclusion is further supported by Delgado's description of Thomas's white shirt as an undershirt and her testimony that Thomas complained that he was cold and so voluntarily sat in a patrol car with the heater running.

 Additionally, Delgado was justified in patting down both Thomas and Trevino. The two matched the description of the robbery suspects Delgado had been given. Delgado also knew that weapons were involved in the robbery and that the suspects might be armed. An officer may conduct a limited search for weapons, even in the absence of probable cause, when the officer reasonably believes that a suspect is armed and dangerous. *Carmouche,* 10 S.W.3d at 329. Therefore, the evidence supports the trial court's implied finding that the temporary detention and pat down of Thomas was reasonable and justified.

## C

Thomas next contends that Delgado did not have consent to search his pocket and seize the money found in it. Thomas argues that he merely stated, in response to Delgado's questions, that he had money, and that this did not constitute consent.

 Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Carmouche,* 10 S.W.3d at 331. The State must show by clear and convincing evidence that the consent was freely given. *Carmouche,* 10 S.W.3d at 331. Whether consent was voluntary involves a question of fact that is determined from the totality of the circumstances. *Johnson v. State,* 226 S.W.3d 439, 443 (Tex.Crim.App.2007). We review a finding of voluntary consent for abuse of discretion. *Id.*

Thomas cites *Ashton v. State* to support his contention that he did not impliedly consent to the search. *See* 931 S.W.2d 5 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd). In that case, the defendant was arrested for public intoxication and placed in a patrol car. *Id.* at 6. The officer requested identification and the defendant told him it was in her purse in the car. *Id.* The officer then searched the purse and found the defendant's identification next to a clear plastic bag containing cocaine. *See id.* The court upheld the search as one incident to an arrest, but declined to comment on the State's argument that the defendant gave express or implied consent to retrieve her identification from her purse, noting that the Court of Criminal Appeals had not addressed the issue of implied consent in similar circumstances. *Id.* at 8. Instead, the court determined that nothing in the record indicated that the defendant consented to a search of her

purse after "merely informing the officer of the location of her identification." *Id.*

More recently, in *Baldwin v. State*, the Court of Criminal Appeals held that a police officer exceeded his authority during a suspect's detention when, after asking the handcuffed suspect where his identification was located, the officer reached into the suspect's pocket to retrieve his wallet. 278 S.W.3d 367, 369 (Tex.Crim.App.2009). In *Baldwin*, an officer encountered the appellant, who was dressed in black and walking down a sidewalk, after receiving a report of a white male dressed in black walking around looking into houses. *Id.* at 369. There had also been several burglaries in the neighborhood. *Id.* at 370. The appellant did not directly answer the officer's questions and he appeared "anxious and nervous," so the officer handcuffed him. *Id.* The officer then asked the appellant where his identification was, and the appellant replied that it was in his right pants pocket. *Id.* The officer, believing that this response constituted permission to reach into appellant's pocket, did so and retrieved a small wallet. *Id.* When the officer removed the license to examine it, he saw behind it a small baggie containing cocaine. *Id.* On review, the Court of Criminal Appeals held that the officer did not have probable cause to arrest the appellant or to reach into his pocket to retrieve his identification. *Id.* at 371–72. Further, the court held that the officer's belief that he had consent to search the appellant's pocket was objectively unreasonable because the appellant's response was simply an answer to the officer's question regarding the location of his identification and not a consent for the officer to search his person. *Id.* at 372.

*Baldwin* and *Ashton* are distinguishable from this case, however, because Thomas did not merely tell Delgado where his money was located. Here, after Delgado patted down Thomas and Trevino, she asked if they had any identification on them. Trevino stated that he had a wallet, but Thomas said that he did not have a wallet with him. Delgado then asked Thomas and Trevino what they were doing and where they were going, and they responded that they were going to buy chips. Delgado asked Thomas how he was going to buy chips when he had no wallet. Delgado testified that Thomas seemed "almost offended" and he "put his hands up and turned and gave [her] his pocket" as he said "I've got money" and "look."

■ Although Delgado acknowledged that she did not expressly ask for permission to search Thomas's pocket, based on Thomas's putting his hands up, "put[ting] his hip towards [her]," and inviting her to "look," she believed that he was giving her permission to search his pocket to retrieve his money. Thomas did not testify and there was no other contradictory evidence concerning this exchange. Voluntary consent to search has been found in similar circumstances in which the consent was not expressly given. *See, e.g., Gallups v. State*, 151 S.W.3d 196, 201 (Tex.Crim.App. 2004) (defendant "motioned for [the officer] not only to 'come forward' into his home but also to 'come in,'" and gestured with his "'hand being extended out and coming back toward him'"); *Kendrick v. State*, 93 S.W.3d 230, 234 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (appellant indicated his consent to a pat-down search by standing up and raising his hands); *Simpson v. State*, 29 S.W.3d 324, 329 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd) (appellant consented to search of his car by nodding his head affirmatively, even though he testified that he did not give consent). Although it may have been preferable for Delgado to expressly request permission to search Thomas's pocket, under these facts, we cannot say that the

trial court abused its discretion in determining that Thomas consented to the search.

### D

Thomas contends that his detention and later arrest were the result of the allegedly illegal actions of which he complains, and for the same reasons the recovery of the money, the K–9 evidence, and his recorded statement were the fruit of an illegal detention and search. But because we have determined that the trial court did not err in determining that the officer's actions were not illegal, we conclude that Thomas's detention and later arrest likewise were not illegal and the evidence obtained as a result was not inadmissible. Therefore, we overrule Thomas's issue concerning the trial court's denial of his motion to suppress.

* * *

We overrule Thomas's issue and affirm the trial court's judgment.