Affirmed and Memorandum Opinion filed March 4, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00079-CR

___________________

 

George William Stone Jr., Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 400th District Court

Fort Bend County,
Texas



Trial Court Cause No. 47106A

 



 

 

MEMORANDUM OPINION

            Appellant, George William Stone
Jr., was charged with felony driving while intoxicated (DWI).  See Tex.
Penal Code Ann. §§ 49.04, 49.09(b)(2) (Vernon 2003).  Appellant pleaded guilty
and was sentenced, pursuant to his plea agreement, to ten years’ confinement in
the Institutional Division of the Texas Department of Criminal Justice,
probated for four years, and assessed a $1,000 fine.  In a single issue,
appellant challenges the trial court’s partial denial of his motion to suppress. 
The State cross-appeals, challenging the trial court’s partial granting of
appellant’s motion to suppress.  We affirm the judgment of the trial court.    

Factual and Procedural Background

            On April 15, 2007, at approximately 1:15 a.m., Department
of Public Safety Troopers Edwin Lara and Devon Wile were dispatched to a single
car accident.  Upon reaching the accident, the troopers were informed by a
wrecker truck driver at the scene that the driver of the vehicle, appellant,
was walking down the street away from the accident.  Trooper Lara approached
appellant and began questioning him about whether he was the driver of the
vehicle.  Appellant denied driving until Trooper Lara was able to unlock the
vehicle with appellant’s keys.  Appellant was arrested and charged with driving
while intoxicated.  A more detailed examination of the circumstances surrounding
appellant’s arrest will be discussed below in the analysis section.    

Discussion

            Appellant
contends the trial court erred in partially denying his motion to suppress. 
Specifically, he contends all statements made by him should have been
suppressed because they were made without the benefit of Miranda
warnings.  The State argues the trial court erred by partially granting
appellant’s motion to suppress because Miranda warnings were not
required until appellant was formally arrested.  The issue here is at what
point “custody” occurred for the purposes of reading appellant his Miranda
rights.  See Miranda v. Arizona, 384 U.S. 436, 442–57, 86 S. Ct. 1602,
1611–19, 16 L. Ed.2d 694 (1966).    

I.         Applicable Law

            The Fifth Amendment to the United States
Constitution commands that no person “shall be compelled in any criminal case
to be a witness against himself [.]”  U.S.
Const. amend. V.  The warnings set out by the United States Supreme
Court in Miranda v. Arizona were established to safeguard an uncounseled
individual’s constitutional privilege against self-incrimination during
custodial interrogation.  Miranda, 384 U.S. at 442–57, 86 S. Ct. at
1611–19.  The Supreme Court has defined “custodial interrogation” as
“questioning initiated by law enforcement officers after a person has been
taken into custody or otherwise deprived of his freedom of action in any
significant way.”  Id. at 444, 86 S. Ct. at 1612.  Unwarned statements
obtained as a result of custodial interrogation may not be used as evidence by
the State in a criminal proceeding during its case in chief.  Herrera v.
State, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007).

            When considering “custody” for Miranda
purposes, we apply a reasonable person standard.  Id.  A person is in
“custody” only if, under the circumstances, a reasonable person would believe
that his freedom of movement was restrained to the degree associated with a
formal arrest.  Id. (citing Dowthitt v. State, 931 S.W.2d 244,
254 (Tex. Crim. App. 1996)).  Our “custody” inquiry also includes an
examination of all the objective circumstances surrounding the questioning.  Id.
(citing Stansbury v. California, 511 U.S. 318, 322–23, 325, 114 S. Ct.
1526, 1529–30, 128 L. Ed.2d 293 (1994)).  The subjective belief of law
enforcement officials about whether a person is a suspect does not factor into
our “custody” determination unless an official’s subjective belief was somehow
conveyed to the person who was questioned.  Id. at 525–26.

            Article 38.22 of the Texas Code of Criminal
Procedure governs the admissibility of statements made by a defendant during
custodial interrogation in a criminal proceeding.  Code Crim. Proc. Ann. art.
38.22 (Vernon 2005).  The warnings provided in Section 2(a) of Article 38.22
are virtually identical to the Miranda warnings, with one exception—the
warning that an accused “has the right to terminate the interview at any time”
as set out in Section 2(a)(5) is not required by Miranda.  Herrera,
241 S.W.3d at 526.  As with the Miranda warnings, the warnings in
Section 2(a) of Article 38.22 are required only when there is custodial
interrogation.  Id.  Our construction of “custody” for purposes of Article
38.22 is consistent with the meaning of “custody” for purposes of Miranda. 
Id.

            Article 38.22 does not preclude the admission of
non-custodial statements.  Dowthitt, 931 S.W.2d at 262.  A person held
for investigative detention is not in “custody.” See id. at 255.  An
investigative detention is a detention of a person reasonably suspected of
criminal activity to determine identity or maintain the status quo momentarily
while obtaining more information.  See Terry v. Ohio, 392 U.S. 1, 20–21,
88 S. Ct. 1868, 1879–80, 20 L. Ed.2d 889 (1968).  The detention’s scope must be
temporary, lasting no longer than necessary to effectuate its purpose, and must
involve actual investigation and use the least intrusive means possible.  See
Davis v. State, 947 S.W.2d 240, 244–45 (Tex. Crim. App. 1997).

            Police conduct may transform a non-custodial
interrogation into a custodial interrogation.  See Dowthitt, 931 S.W.2d
at 255–57.  We examine each progressive level of intrusion to determine its
reasonableness under the circumstances based on the information known to the
officer at the time.  Francis v. State, 896 S.W.2d 406, 411 (Tex.
App.—Houston [1st Dist.] 1995), pet. dism’d improvidently granted, 922
S.W.2d 176 (Tex. Crim. App. 1996).  In Dowthitt, custody was inferred in
an unusual circumstance when: (1) a very long time period elapsed during which
interrogation occurred, (2) the police exercise control over the defendant, and
(3) the defendant’s admission to being present at the scene of the crime
manifested probable cause.  Dowthitt, 931 S.W.2d at 257.  In Berkemer
v. McCarty, the U.S. Supreme Court stated that “the only relevant inquiry
is how a reasonable man in the suspect’s position would have understood the
situation,” and whether the treatment by the police can be fairly
“characterized as the functional equivalent of a formal arrest.”  Berkemer
v. McCarty, 468 U.S. 420, 441–42, 104 S. Ct. 3138, 82 L. Ed.2d 317 (1984).

II.        Standard of Review

            In a motion to suppress hearing, the trial
court is the sole trier of fact and judge of the credibility of the witnesses
and the weight to be given their testimony.  State v. Ross, 32 S.W.3d
853, 855 (Tex. Crim. App. 2000).  Accordingly, the judge may believe or
disbelieve all or any part of a witness’s testimony, even if that testimony is
not controverted.  Id.  This is so because it is the trial court that
observes firsthand the demeanor and appearance of a witness, as opposed to an appellate
court which can only read an impersonal record.  Id.  In reviewing a
trial court’s ruling on a motion to suppress, we defer to the trial court’s
interpretation of historical facts.  See Hypolite v. State, 985 S.W.2d
181, 185 (Tex. App.—San Antonio 1998, no pet.) (citing Guzman v. State,
955 S.W.2d 85, 87–88 (Tex. Crim. App. 1997)).  However, when the record shows
uncontroverted events and includes a videotape, we review de novo how
the trial court applied the law to the undisputed facts.  Herrera v. State,
194 S.W.3d 656, 658 (Tex. App.—Houston [14th Dist.] 2006, pet. ref’d); see
also Mayes v. State, 8 S.W.3d 354, 358 (Tex. App.—Amarillo 1999, no pet.)
(applying de novo review to trial court’s ruling on motion to suppress because
the credibility and demeanor were not an issue when facts surrounding
interrogation were videotaped and uncontroverted).   

III.      Analysis

            A.        Facts

            The trial court filed findings of fact and
conclusions of law after ruling on appellant’s motion to suppress.  In its
sixth conclusion of law, the trial court determined “[t]hat all statements made
by the defendant after he admitted that the vehicle belonged to him and that he
had been driving it that night when the collision occurred . . . . and before
he was read his Miranda warnings are not admissible.”  From this we can
conclude the trial court determined custody occurred when appellant admitted
the vehicle belonged to him and that he had been driving it.  See Herrera,
241 S.W.3d at 525.  In his brief, appellant contends custody occurred when Trooper
Lara asked appellant to step in front of his patrol vehicle.  The State argues
custody occurred when appellant was formally arrested.

            During the hearing on the motion to suppress, Trooper
Lara testified that he was dispatched to single car accident at approximately
1:15 a.m.  When he arrived at the location of the accident, he observed a Mazda
vehicle, which had collided with a fire hydrant and been abandoned by its
driver.  A wrecker truck driver informed Trooper Lara that appellant had been
driving the Mazda and that he was walking down the street away from the
collision.  After receiving this information, Trooper Lara approached
appellant, presumably to determine whether appellant had been driving.  A video
recording of Trooper Lara and appellant’s encounter reveals the following chain
of events.  Trooper Lara asked appellant whether he had been driving and
appellant responded negatively.  Despite appellant’s denial, Trooper Lara asked
appellant to step in front of his patrol vehicle.[1]  

            Once in front of the patrol vehicle, Trooper Lara
requested appellant remove his hands from his pockets and appellant complied. 
Next, Trooper Lara asked appellant for his driver’s license and appellant
willingly handed it over.  Trooper Lara kept appellant’s driver’s license in
his possession.  Trooper Lara again inquired into whether appellant had been
driving and appellant said no.  Trooper Lara informed appellant he detected a
strong odor of alcohol emanating from his person and asked whether he had been
drinking.  Appellant said he had consumed six beers and a bottle of wine.[2]  Trooper Wile
escorted appellant down the street to the wrecked vehicle.  Trooper Wile placed
his hand on appellant’s arm because appellant was having trouble walking. 
Trooper Lara followed the two in his patrol vehicle.  Once they reached the Mazda,
appellant confirmed the Mazda was not his.  He also said that if they ran its license
plate numbers, the Mazda would not come back under his name.  While the Troopers
examined the vehicle, appellant stood alone on the side of the road completely
unrestrained.  Trooper Lara returned to appellant and asked him whether he had
any keys in his pocket.  Appellant handed over his keys, one of which was to a
Mazda vehicle.  When Trooper Lara pushed the remote lock button on the Mazda
key the abandoned Mazda flashed its lights and became unlocked.  At that point,
appellant admitted the Mazda was his and that he had been driving.[3]

            After appellant admitted to driving the vehicle, Trooper
Lara brought him back in front of the patrol vehicle and continued questioning
appellant about the events that had taken place that night.  Appellant admitted
to consuming alcohol and driving his vehicle.  Additionally, Trooper Wile
located a neighbor who witnessed the vehicle wreck and identified appellant as
the person she saw getting out of the vehicle.  Trooper Lara asked appellant if
he would take a field sobriety test and appellant refused.  Trooper Lara then
told appellant he was under arrest for driving while intoxicated.  Appellant
was handcuffed and placed in the patrol vehicle.    

            B.        Application

            Trooper Lara’s initial encounter with appellant,
inquiring into whether appellant was the driver of the vehicle, must be
classified as an investigative detention.  See Thomas v. State, 297
S.W.3d 458, 461 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (stating a
police officer may stop and briefly detain a person for investigatory purposes
if the officer has a reasonable suspicion supported by articulable facts that
the person detained is, has been, or soon will be engaged in criminal
activity).  Trooper Lara had reasonable suspicion appellant may have been the driver
of the wrecked Mazda because of the statements the wrecker truck driver made to
him and the fact that appellant was the only person on the street at 1:15 a.m. 
See id. at 461–62.  When Trooper Lara approached appellant on the
street, it was solely to determine whether he was the driver.  Trooper Lara did
not have probable cause to arrest appellant for DWI or public intoxication.  See
Baldwin v. State, 278 S.W.3d 367, 371 (Tex. Crim. App. 2009).  Trooper Lara
did not know whether appellant had driven the vehicle and he did not know appellant
was intoxicated.  It was not until he confronted appellant in front of the patrol
vehicle that he may have developed reasonable suspicion that appellant was
intoxicated.[4] 
Furthermore, it was not until appellant admitted that he had been drinking that
Trooper Lara had probable cause to arrest appellant for public intoxication. 
Regardless, Trooper Lara did not objectively manifest intent to arrest
appellant for public intoxication.  See Herrera, 241 S.W.3d at 525–26. 
Nothing indicates appellant believed he would be arrested for public
intoxication, the objective evidence shows he was more concerned with denying
he had been driving a vehicle.  See Dowthitt, 931 S.W.2d at 254 (stating
one of the factors relevant to determining custody is the subjective belief of
the defendant as objectively manifested).  Therefore, whether or not Trooper Lara
had probable cause to arrest appellant for public intoxication does not influence
our determination of when custody occurred.[5]
See id. at 255 (stating probable cause does not automatically establish
custody, rather custody is established if the manifestation of probable cause,
combined with other circumstances, would lead a reasonable person to believe
that he is under restraint to the degree associated with an arrest).  The
objective circumstances indicate neither Trooper Lara nor appellant believed an
arrest for public intoxication would take place that night.

            The trial court found that a custodial
interrogation took place when appellant admitted to driving the vehicle.  We
agree.  After appellant admitted to driving and wrecking the vehicle, Trooper
Lara asked appellant to step back towards the patrol vehicle and began questioning
him again.  Trooper Lara asked appellant where he was going, how much he had to
drink, what he had to eat that day, how much sleep he had gotten, and whether
he would submit to a field sobriety test.  These questions objectively indicate
Trooper Lara was commencing a formal DWI investigation.  See Dowthitt, 931
S.W.2d at 254 (stating one of the factors relevant to determining custody is
the focus of the investigation).  After appellant admitted to drinking and
driving, Trooper Lara should have advised appellant of his rights under Miranda
and article 38.22 of the Code of Criminal Procedure.  Because Trooper Lara
failed to do so, appellant’s statements after admitting to driving the vehicle
were properly suppressed by the trial court.[6] 


            Accordingly, we overrule appellant’s sole issue. 
Additionally, we overrule the State’s cross-appeal.  

            

Conclusion

            Having overruled appellant’s sole issue and the
State’s cross-appeal, we affirm the judgment of the trial court. 

            

            

                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Chief Justice
Hedges and Justices Anderson and Christopher.

Do
Not Publish— Tex. R. App. P. 47.2(b).









[1] In his brief, it is at
this point appellant contends a custodial interrogation occurred.  During oral
argument, appellant argued custody occurred minutes later when Trooper Wile
walked appellant to the wrecked vehicle.





[2] In his brief appellant
argues this statement should have been suppressed, during oral argument
appellant conceded that this evidence was admissible.  





[3] It is at this point that
the trial court found custody occurred.  The trial court suppressed all
statements made after this point.  





[4] Trooper Lara testified
that he smelled a strong odor of alcohol coming from appellant’s person, he
noticed that appellant’s eyes were bloodshot, and that appellant was slurring
his words.





[5] Appellant argues that
because Trooper Lara had probable cause to arrest appellant for public
intoxication this was a custodial interrogation.  





[6] Furthermore, as we have
concluded the trial court properly suppressed appellant’s statements, we
overrule the State’s cross-appeal.  For the reasons above, the trial court
properly found custody occurred after appellant admitted to driving.  All
statements following this admission were properly suppressed because they were
made without the benefit of Miranda.  By the time appellant was formally
arrested he should have already been warned of his Miranda rights.