**Affirmed and Memorandum Opinion filed December 22, 2011.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-10-01221-CR

---

### DEON STEWART, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 122nd District Court
Galveston County, Texas
Trial Court Cause No. 09CR3036**

---

## M E M O R A N D U M   O P I N I O N

Appellant Deon Stewart pleaded guilty to the charge of knowingly possessing the controlled substance Methylenedioxy Methamphetamine, and the trial court assessed an enhanced sentence of confinement for twenty-five years. Appellant argues that the trial court erroneously denied his motion for new trial. We affirm.

### BACKGROUND

At approximately 9:30 p.m. on October 12, 2009, Texas City Police Department Officer Ira Fowler was on patrol headed southbound on Vauthier Road and approaching the intersection of Blue Jay Drive. Approximately 100 feet in front of Officer Fowler, a

Nissan Armada made a left turn from Blue Jay Drive to go southbound on Vauthier Road, allegedly without signaling. Officer Fowler activated his emergency lights and stopped the Nissan Armada shortly thereafter. Officer Fowler asked the driver, appellant, for a driver's license, and appellant told Officer Fowler that "he left it at home" but "could go get it." Officer Fowler noted that appellant "seemed like he was trying to get away" and "appeared real nervous. His hands were real shaky." Officer Fowler asked appellant to exit the vehicle, and appellant "actually tried to walk away from me. I had to step in front of him and say, 'Whoa, whoa, whoa. Where are you going[?]' and ask him to step back to the vehicle." Officer Fowler attempted to conduct a pat-down of appellant's outer clothing, and "at that point he took off running." As appellant ran, Ecstasy pills fell from his pants pocket. Officer Fowler arrested appellant, who was later indicted for knowingly possessing the controlled substance Methylenedioxy Methamphetamine.[1]

Appellant filed a motion to suppress the evidence recovered pursuant to the traffic stop. The trial court denied the motion, and appellant pleaded guilty. The trial court assessed an enhanced sentence of confinement for twenty-five years on November 8, 2010. Appellant filed a motion for new trial on December 8, 2010, arguing that his motion to suppress was erroneously denied. The trial court held a hearing on appellant's motion on February 22, 2011. The trial court did not grant appellant's motion for new trial.

Appellant argues in one issue on appeal that the trial court should have granted the motion for new trial because Officer Fowler did not have reasonable suspicion to conduct the initial traffic stop.

## ANALYSIS

### I. Timeliness of Motion for New Trial Hearing

We first address the State's preliminary contention that appellant's issue is "moot"

---

[1] Appellant initially was indicted for possession of between four and 400 grams of the controlled substance Methylenedioxy Methamphetamine with the intent to deliver, but the State later reduced the charge to the lesser-included offense of possession in exchange for appellant's plea of guilty.

2

and that "[t]he Trial Court could not have abused its discretion by denying [appellant's] motion for new trial" because the motion was overruled by operation of law, rendering the February 22, 2011 hearing untimely.

The trial court imposed appellant's sentence on November 8, 2010. Appellant filed a timely motion for new trial on December 8, 2010. *See* TEX. R. APP. P. 21.4(a) (motion for new trial must be filed within thirty days after date on which trial court imposes sentence). That motion was overruled by operation of law on January 24, 2011. *See* TEX. R. APP. P. 21.8(a), (c) (motion for new trial not ruled on by written order within 75 days after sentence imposed will be deemed denied). We therefore agree with the State that the trial court's February 22, 2011 hearing was untimely. *See State v. Belcher*, Nos. 14-00-01197-CR, 14-00-01198-CR, 2001 WL 306181, at *1 (Tex. App.—Houston [14th Dist.] Mar. 29, 2001, pet. ref'd) (per curiam) (not designated for publication) ("When the time in which to rule on a defendant's motion has expired, any subsequent action on the motion must be characterized as a nullity." (citing *State ex rel. Cobb v. Godfrey*, 739 S.W.2d 47, 49 (Tex. Crim. App. 1987) (orig. proceeding))).

Although we may not consider the arguments and any evidence presented at the untimely hearing, we disagree with the State that we are precluded from reviewing the trial court's failure to grant appellant's otherwise timely motion. We therefore continue with our consideration of appellant's issue on appeal.

## II.    Motion for New Trial and Motion to Suppress

Appellant argues in his motion for new trial that "[t]he ruling on [appellant's] Motion to Suppress in this cause is contrary to the law and the evidence." Appellant argues in his motion to suppress and in his brief on appeal that Officer Fowler did not have reasonable suspicion to stop appellant for failing to signal[2] because (1) Officer Fowler testified that he could not see appellant's left rear signal while he was stopped at

---

[2] Texas Transportation Code section 545.104(b) states: "An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." TEX. TRANSP. CODE ANN. § 545.104(b) (West 2011).

3

the intersection; and (2) the State "provided no evidence that the signal lights on [appellant's] vehicle, or any vehicle, stay on during a turn, or after a turn has been completed" to substantiate Officer Fowler's statement that he would have seen appellant's left rear signal lights as they came into his view during or after the turn if they had been activated prior to the turn, as required by law.[3]

A trial court's ruling on a motion to suppress is reviewed under an abuse-of-discretion standard. *Thomas v. State*, 297 S.W.3d 458, 460 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd.) (citing *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005)). We give almost total deference to the trial court's determination of historical facts, but review de novo the trial court's application of the law to these facts. *Id*. (citing *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000)). When, as here, the trial court makes no findings of fact, we review the evidence in the light most favorable to the trial court's ruling and assume that the record supports the trial court's implicit fact findings. *Id*. (citing *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000)). Thus, the party that prevailed in the trial court is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

Under the Fourth Amendment, a warrantless detention of a suspect that amounts to less than a full-blown custodial arrest must be justified at least by a reasonable suspicion. *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). A police officer has reasonable suspicion to detain a person if the officer has specific, articulable facts that, combined with rational inferences from those facts, would lead the officer reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id*. This standard is an objective one that disregards the actual subjective intent or motive of the detaining officer and looks, instead, to whether there was an objective justification for the detention. *Id*.

---

[3] Appellant incorrectly asserts that "Officer Fowler did, however, testify conjecturally that he did see [appellant's] signal light" after the turn. Officer Fowler gave no such testimony.

4

The State argues that Officer Fowler had a "reasonable suspicion" that appellant committed a traffic violation by failing to signal, and that the traffic stop therefore was lawful. With respect to appellant's alleged failure to signal pursuant to this law, Officer Fowler testified:

A. I stopped [appellant] because he didn't signal.

       \*               \*               \*

Q. So if you're coming from [north of the intersection], if he is giving the signal [to turn left and travel southbound], how were you able to see from there whether the left signal was turned on or not?

A. When you're turning, your signal stays on until you straighten your vehicle completely out. And at that point it was like 9:20 at night and that street . . . is pretty dark and you could see the lights actually flashing if it was on.

Q. Okay. So if it was turned on—

A. If it was turned on you would be able to see it flashing, considering how dark it is.

Q. And you did not—

A. I did not see it flashing.

       \*               \*               \*

Q. Sir, you were not close enough to be able to see a turn signal, correct?

A. Not while he's parked [at the intersection about to turn left], no.

Q. So, you couldn't see whether or not the turn signal on the left-hand side of his vehicle was activated, correct?

A. Not while he was stopped at the stop sign, no.

       \*               \*               \*

Q. So it's quite possible that that signal could have been on.

A. No.

Q. How do you know if you couldn't have seen it?

A. Because when he turned directly in front of me—as I'm traveling southbound, he turned southbound in front of me and his light was not flashing at that time.

       \*               \*               \*

Q. Isn't it possible, though, that given the fact you could not see through his

5

vehicle to the left-hand side of his turn indicators, he may have disengaged when he turned?

A. No, it did not disengage because he did not have it on when he turned.

           \*                  \*                 \*

A. If he had . . . signaled at that point, it would have still been on when he turned. . . . It stays on until their vehicle straightens out.

Appellant testified at the hearing that "I know when I was approaching the stop sign I activated my signal light, my left turn signal. . . . I know for a fact I activated my left turn signal. . . . I do it every day." The defense played a demonstrative video of appellant's Nissan Armada making a left turn in the intersection in question. Appellant testified about the video as it played at the hearing:

Q. Prior to it making a left turn, were you able to see a left-hand turn signal indicator?

A. Yes, right at the very end as I'm coming out of my turn. I seen a glimpse of my signal, you know, flashing just maybe a second, two seconds.

Q. At any point in time before you made your left turn from Blue Jay to Vauthier, did you turn off your signal light?

A. No. My signal light automatically cuts off on its own.

           \*                  \*                 \*

Q. Until your vehicle actually straightens, it does not click off on its own, right, until it's actually totally straightened out? . . .

A. Yes.

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court properly could have determined that Officer Fowler had reasonable suspicion to conduct a traffic stop because (1) he did not see appellant's left rear signal flashing in the dark as the signal came into view during or after the turn; and (2) Officer Fowler and appellant both testified that appellant's signal would have continued blinking during the turn and for at least "a second, two seconds" as appellant came out of the turn, if appellant had activated the signal prior to making the turn. *Compare Franks v. State*, No. 03-06-00417-CR, 2008 WL 104101, at \*3–4 (Tex. App.—

Austin Jan. 9, 2008, pet. ref'd) (not designated for publication) (as a matter of law, officer had reasonable suspicion to stop appellant based on officer's testimony that "when he observed appellant's vehicle in the turning lane and in the left turn, the vehicle's turn signal was not flashing or blinking," despite fact that officer was not in a position to see whether appellant activated her turn signal 100 feet prior to making the turn), *with Mills v. State*, 296 S.W.3d 843, 846–48 (Tex. App.—Austin 2009, pet. ref'd) (evidence that officer was not in position to view appellant's right turn signal 100 feet before right turn, if believed, would require jury to find traffic stop illegal based on lack of reasonable suspicion because "it is undisputed that [appellant] had his right turn signal on when he was at the intersection"). The trial court properly could have concluded that Officer Fowler had specific, articulable facts that, combined with rational inferences from those facts, would lead Officer Fowler reasonably to conclude that appellant had been engaged in criminal activity. *See Elias*, 339 S.W.3d at 674; *see also* TEX. TRANSP. CODE ANN. § 545.104(b).

We review a trial court's ruling on a motion for new trial under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). Because we have concluded the trial court did not err in its denial of the motion to suppress, we also conclude there was no abuse of discretion in its failure to grant appellant's motion for new trial premised on the suppression issue. *See id.* We overrule appellant's issue and affirm the trial court's judgment.

/s/     Sharon McCally
        Justice

Panel consists of Justices Brown, Boyce, and McCally.

Do Not Publish — TEX. R. APP. P. 47.2(b).

7