**Affirmed and Memorandum Opinion filed September 25, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00725-CR

**JASON MICHAEL PLACIDE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause No. 1353416**

## M E M O R A N D U M    O P I N I O N

Appellant Jason Michael Placide appeals his conviction for possession of cocaine. In two issues, appellant argues the trial court erred in denying his motion to suppress because (1) the officers lacked reasonable suspicion to detain him; and (2) his statement was made as a result of custodial interrogation and was inadmissible under article 38.22, section 3 of the Texas Code of Criminal Procedure. We affirm.

BACKGROUND

Appellant was indicted for possession of between one and four grams of cocaine. *See* Tex. Health & Safety Code § 481.115(c). Appellant filed a pretrial motion to suppress in which he argued that a Houston Police officer "broke into" his vehicle and searched the vehicle without consent. Appellant argued that "[a]ny controlled substances found in the vehicle" should be suppressed because the search was without a warrant and without probable cause. Appellant also sought suppression of "[a]ny other matters that the Court finds should be suppressed upon hearing of this motion." Appellant argued that the evidence should be suppressed because (1) the narcotics were not in plain view in the vehicle; and (2) the vehicle search was not incident to a lawful arrest.

At the hearing on appellant's motion to suppress Officer Joseph Little of the Houston Police Department testified that at approximately 4:00 a.m. on July 6, 2012, he was patrolling the north side of Houston in an area known for narcotics and crime. He received a dispatch call for a disturbance at an apartment complex located at 8034 Antoine. The 911 caller reported three or four African-American males using narcotics and loading guns while standing outside a white truck near a black Dodge Magnum. When Little arrived at the apartment complex he observed three African-American males standing outside of a white pickup truck near a black Dodge Magnum. He identified appellant as one of the men he saw that night. Because Little had received a report that the men were loading weapons, he detained all three men, handcuffed them, and placed them in separate patrol cars.

In conducting his investigation, Little shined a flashlight into the black Dodge Magnum, and observed narcotics on the car's console. Little saw a bag of marijuana and a bag of clear pills with no label on them. Little asked appellant if the black Dodge Magnum was his car, and appellant "admitted that that was his car

2

and he had been driving it and he lives at the registered address." Appellant was arrested after the marijuana and pills were discovered in the vehicle. After appellant was arrested, officers found crack cocaine in the vehicle. The pills also tested positive for cocaine.

On cross-examination, Little testified that he did not know the identity of the 911 caller. The officers searched all three men, but did not find weapons.

Officer Matthew was also on the scene and testified to the same events.[1] Matthew Little testified that the three men were detained because the call reported they were loading weapons. The men were handcuffed for officer safety and placed in the patrol cars so they could not flee the scene until the investigation was complete.

Appellant testified that the car belonged to his mother and he had no knowledge of drugs in the car. On cross-examination, appellant admitted more than one prior conviction for possession of controlled substances but could not remember an exact number of prior convictions. Appellant believed he was under arrest at the time he was handcuffed and placed in the patrol car.

During his closing statement, appellant's counsel argued that (1) appellant's statement that he owned the car should be excluded because he was under arrest and officers did not read his *Miranda* rights;[2] and (2) the evidence should be excluded because the search was warrantless and not a proper inventory search incident to arrest. The State argued that the officers had reasonable suspicion of a threat to their safety as a result of the potential weapons reported in the police dispatch. Officers detained appellant and the other individuals for their safety

---

[1] We refer to Joseph Little as "Little" throughout this opinion and refer to Matthew Little as "Matthew Little."

[2] *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

while they conducted an investigation. The investigation revealed marijuana in plain view on the console of the black Dodge Magnum. The State further argued that appellant's argument about his statement fell outside the scope of the hearing.

The trial court made findings of fact and conclusions of law with the following preface:

> During the aforementioned hearing, in addition to urging the suppression of physical evidence, the Defendant also urged suppression of certain oral statements, although such statements were NOT mentioned in the MOTION TO SUPPRESS. At the conclusion of said hearing, this Court denied the aforementioned MOTION TO SUPPRESS. This Court makes the following FINDINGS OF FACT AND CONCLUSIONS OF LAW with regard to BOTH the physical evidence seized and the oral statements made by the Defendant, while not conceding that the consideration of such statements was properly before the Court based on the aforementioned MOTION TO SUPPRESS:
>
> **Findings of Fact**
>
> 1. The Defendant, Jason Michael Placide, was charged by indictment in the above styled and numbered cause with the felony offense of Possession of a Controlled Substance.
>
> 2. Officers Joseph Little and Matthew Little of the Houston Police Department are credible and reliable witnesses who testified truthfully at the hearing regarding Defendant's Motion To Suppress Evidence.
>
> 3. On July 6, 2013, at approximately 4:00 a.m. a report was made to the Houston Police Department that three to four black males were standing in the area of a white truck and a black Dodge Magnum at 8034 Antoine, Houston, Harris County, Texas, in possession of narcotics and weapons.
>
> 4. On July 6, 2013, shortly after 4:00a.m., Officers Joseph Little and Matthew Little responded to the reported disturbance at 8034 Antoine, Houston, Harris County, Texas, involving three to four black males allegedly in possession of narcotics and weapons in the area of a white truck and a black Dodge Magnum.
>
> 5. 8034 Antoine, Houston, Harris County, Texas, is in a high crime

4

area known for narcotics, and the officers arrived on scene at approximately 4:00 a.m., in the hours of darkness.

6. When the officers arrived at 8034 Antoine, Houston, Harris County, Texas, they observed three black males in the area of a white truck, and a black Dodge Magnum within three parking spaces of the white truck, confirming several pieces of information from the report.

7. The officers briefly detained each of the three men, including the Defendant, Jason Placide, in order to safely investigate and ensure the continued presence of the suspects at the scene.

8. At the time the Defendant was detained, the scene of the investigation was not yet secure, and the officers could not be certain whether there were unsecured weapons in the area.

9. There was no significant show of force during the investigative detention.

10. As part of the detention, the Defendant was frisked for weapons, handcuffed, and placed in the back of a patrol car.

11. While conducting their brief investigation with the help of a third HPD officer, Officers Joseph Little and Matthew Little looked into the window of the black Dodge Magnum vehicle (with the aid of a 360 lumen flashlight) from outside the vehicle, and observed what they both believed to be marijuana, based on their training and experience.

12. The Defendant admitted to officers that the black Dodge Magnum was the vehicle he had been driving, and that he lived at the same address where the vehicle was registered.

13. The Defendant was arrested after the discovery and recovery of the marijuana, and after he was linked to the black Dodge Magnum through his statements.

**Conclusions of Law**

1. The officer's testimony established specific, articulable facts (the confirmed details of the call, the nature of the high crime area, time of night, and presence of the suspects in suspicious circumstances) and reasonable inferences substantial enough to support reasonable suspicion that the suspects had been engaged in criminal activity.

2. The investigative detention of the Defendant was lawful, in order to ensure officer safety, maintain the status quo, and ensure the continued presence of the Defendant during the course of a brief

5

investigation, taking into consideration the nature of the area, time of night, and verified details of the call. *State v. Sheppard*, 271 S.W.3d 281,291 (Tex. Crim. App. 2008); *Chambers v. State*, 397 S.W.3d 777 (Tex. App.—Houston [14th Dist.] 2013).

3. The marijuana in the black Dodge Magnum was in plain view and immediately recognizable to the officers as contraband, and the officers involved viewed the marijuana from a location where they were legitimately and lawfully present.

4. The officers involved had probable cause to search the black Dodge Magnum, and the seizure of the narcotics without a warrant was lawful under the automobile exception.

5. Probable cause to arrest the Defendant did not exist prior to his statements linking him to the black Dodge Magnum.

6. The officers used only a minimal amount of force required to investigate, maintain the status quo, and ensure officer safety.

7. The statements of the Defendant in regards to his connection to the black Dodge Magnum were made during an investigative detention that had not evolved into custodial interrogation, and therefore are admissible pursuant to Article 38.22 of the Texas Code of Criminal Procedure.

## STANDARD OF REVIEW

We review a trial court's denial of a motion to suppress for abuse of discretion. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *Thomas v. State*, 297 S.W.3d 458, 459 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). We review the evidence in the light most favorable to the trial court's ruling. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). The trial court is the exclusive factfinder and judge of the credibility of the witnesses. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Turner v. State*, 252 S.W.3d 571, 576 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). We afford almost total deference to the trial court's determination of historical facts supported by the record, especially when the trial court's findings are based on an evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.

App. 1997). We afford the same amount of deference to the trial court's ruling on mixed questions of law and fact if the resolution of these questions turns on an evaluation of credibility and demeanor. *Id*. We review questions not turning on credibility and demeanor de novo. *Id*. If the trial court's decision is correct under any theory of law applicable to the case, the decision will be sustained. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005).

## PRESERVATION OF ERROR

In his first issue appellant argues his statement was the fruit of a Fourth Amendment violation because the officers did not have reasonable suspicion to detain him. The State argues appellant failed to preserve error with regard to the denial of his motion to suppress his statement because appellant's written motion to suppress only sought to suppress the physical evidence recovered from the car.

A motion to suppress is a specialized objection to the admissibility of evidence and must be timely and sufficiently specific to inform the trial court of the complaint. *Johnson v. State*, 171 S.W.3d 643, 647 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). To preserve error for appellate review, an appellant must "let the trial judge know what he wants, why he thinks himself entitled to it, and . . . do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

Appellant's written motion specifically sought to suppress the physical evidence recovered from the car, and vaguely sought suppression of "[a]ny other matters that the Court finds should be suppressed upon hearing of this motion." During the oral hearing on appellant's motion to suppress, appellant argued that his statement should be suppressed because he was in custody at the time he made it and officers did not inform him of his *Miranda* rights. We assume for purposes of

7

the analysis below that appellant's argument at the hearing regarding suppression of his statement sufficed to preserved error.

Appellant also argues on appeal that the officers lacked reasonable suspicion to detain him and that his statement was an impermissible fruit of that Fourth Amendment violation. Appellant did not bring such a contention to the attention of the trial court either in his written motion to suppress or during the oral hearing; he did not ask the trial court to decide the issue of reasonable suspicion and issue a ruling. His motion failed to preserve his contention on appeal because it did not alert the trial court that he wished the issue to be decided. *See* Tex. R. App. P. 33.1(a)(1) (requiring, in order to preserve error, sufficient specificity to make trial court aware of complaint and ruling by court on complaint); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (holding that issue on appeal must comport with complaint made at trial).

On appeal, appellant argues the officers failed to corroborate the facts of the dispatch that indicated the occurrence of criminal activity. Appellant did not make this argument to the trial court; instead, he argued that the search of the vehicle was improper because (1) the officers could not have seen the contraband in plain view, and (2) the search was not conducted as a proper inventory search after arrest. We conclude that appellant did not preserve this contention for appeal because neither his written motion nor his arguments at the hearing alerted the trial court to a contention that the officers lacked reasonable suspicion justifying an investigation. Additionally, appellant did not secure a ruling on such a complaint. *See* Tex. R. App. P. 33.1(a)(1); *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) (concluding that when appellant failed to object to admission of statement at motion-to-suppress hearing on ground for suppression raised on appeal, but instead, argued a different basis for suppression, issue was not

preserved); *Mbugua v. State*, 312 S.W.3d 657, 666–67 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding that appellant did not preserve his complaint regarding admissibility of his custodial statement because complaint on appeal did not comport with grounds argued in motion to suppress). We overrule appellant's first issue.

## CUSTODY

In his second issue, appellant argues his statement concerning ownership of the car was the product of a custodial interrogation. Appellant argues the statement was inadmissible because he did not receive warnings under *Miranda*.

The Fourth Amendment and article 38.22 of the Texas Code of Criminal Procedure allow admission of noncustodial statements. *See, e.g., Miranda*, 384 U.S. at 444; *Dowthitt v. State*, 931 S.W.2d 244, 263 (Tex. Crim. App. 1996). Thus, to determine whether appellant's statement about ownership of the car was admissible, we must first determine the point at which officers placed appellant in custody.

A police officer may stop and briefly detain a person reasonably suspected of criminal activity in the absence of probable cause to arrest the person. *Terry v. Ohio*, 392 U.S. 1, 22 (1968). The officer may use such force as is reasonably necessary to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety. *Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App.), *cert. denied*, 522 U.S. 894 (1997). There is no bright-line test providing that mere handcuffing is always the equivalent of an arrest. *Id*. at 118. Instead, when evaluating whether an investigative detention is unreasonable, "common sense and ordinary human experience must govern over rigid criteria." *Id*.

A police officer's interaction with a citizen can be classified as an encounter,

9

detention, or arrest. *See State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011). "A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant." Tex. Code. Crim. Proc. art. 15.22; *Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.). But this restraint-of-liberty standard is not adequate when distinguishing between an arrest and a detention because it is a characteristic common to both. *Mount*, 217 S.W.3d at 724. Rather, the distinction is a matter of degree depending on the length of the detention, the amount of force employed, and whether the officer actually conducted an investigation. *Id.*; *Woods v. State*, 970 S.W.2d 770, 775 (Tex. App.—Austin 1998, pet. ref'd).

A court must determine reasonableness from the perspective of a reasonable officer at the scene, making allowances for the fact that officers must often make quick decisions under tense, uncertain, and rapidly changing circumstances. *Rhodes*, 945 S.W.2d at 118. Relevant factors in the reasonableness inquiry are the nature of the crime under investigation, the degree of suspicion, the location of the stop, the time of day, the reaction of the suspect, and whether the officer actually conducted an investigation after seizing the suspect. *Mount*, 217 S.W.3d at 725; *Chambers v. State*, 397 S.W.3d 777, 782 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

The trial court found that "[t]he investigative detention of the Defendant was lawful, in order to ensure officer safety, maintain the status quo, and ensure the continued presence of the Defendant during the course of a brief investigation, taking into consideration the nature of the area, time of night, and verified details of the call."

During the suppression hearing, Little testified that he received a dispatch

describing three or four African-American males using drugs and loading weapons near a white pickup truck and a black Dodge Magnum at 8034 Antoine. When the officers arrived at 8034 Antoine, they observed three African-American males standing around a white pickup truck with a black Dodge Magnum parked nearby. For officer safety the officers patted down the three men, handcuffed them, and placed them in separate patrol cars. Little testified that although they found no weapons during the pat-down search the handcuffs were necessary for the officers' safety, and detention in the patrol cars was necessary to prevent the suspects from fleeing. The officers then shined a flashlight into the white pickup truck and the black Dodge Magnum. In response to Little's question, appellant admitted the Dodge Magnum was his vehicle.

Although Little detained appellant in the patrol car with handcuffs, the amount of force was reasonable under the circumstances. The incident took place at 4:00 a.m. in a parking lot in a high-crime area where Little had previously responded to narcotics and weapons calls. Little conducted a brief investigation in which he discovered narcotics in a car appellant admitted to be his. The trial court's finding that Little did not use more force than reasonably necessary to protect himself and those around him during his brief investigation is supported by the evidence at the hearing. *See Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002) (handcuffing and escorting appellant to patrol car did not transform investigative detention into arrest where officer had reasonable concern for safety because he was investigating crime involving a weapon).

Appellant argues the officers deprived him of his freedom to a degree comparable to a formal arrest. In support of his argument, appellant cites *Ramirez v. State*, 105 S.W.3d 730, 740 (Tex. App.—Austin 2003, no pet.), and *Alford v. State*, 22 S.W.3d 669, 672 (Tex. App.—Fort Worth 2000, pet. ref'd). *Ramirez* and

11

*Alford* are distinguishable.

In *Ramirez*, an officer who arrived at Ramirez's home in response to a neighbor's complaint noticed marijuana paraphernalia, marijuana residue, and the odor of marijuana as Ramirez stepped out of the garage and closed the door behind him. 105 S.W.3d at 735. A second individual, Reynosa, exited the garage and left the door partially open. *Id.* at 736. The officer called for back-up because he recognized Reynosa as a suspect in a shooting and became concerned that Reynosa or Ramirez may have had weapons. *Id.* Reynosa was subjected to a pat down, which revealed a knife and a plastic bag containing marijuana. *Id.* Reynosa was arrested and moved away from the garage. *Id.* Ramirez was also subjected to a pat down; while conducting the pat down, the officer told Ramirez he was being detained and placed him in handcuffs. *Id.* The officer informed Ramirez that he could see drug paraphernalia and drug residue in the garage and asked, "Is there anything else I'm going to find in there that's illegal, any more marijuana?" *Id.* Ramirez replied, "Well, I guess there's some pot in the red cooler." *Id.*

The Austin Court of Appeals determined that Ramirez was in custody at the time the officer asked whether he was going to find anything else in the garage because a reasonable person in Ramirez's position would likely believe his freedom of movement had been restrained to the degree associated with an arrest. *Id.* at 740. The court determined that by handcuffing Ramirez, telling him he was being detained, and informing him that they had seen illegal items in the garage, a reasonable person would have thought he was under arrest. *Id.*

The facts in *Ramirez* are distinguishable because Ramirez was near his home; had been told he was being detained; and knew the officers had seen illegal contraband in his garage. In contrast, the officers in this case had a report that there were weapons being loaded and the men were in a parking lot in a high crime area

after dark. In *Ramirez*, unlike this case, the officers did not conduct an investigation after detaining Ramirez.

In *Alford*, the appellant was seen driving on an interstate highway passing cars and weaving in and out of lanes. *Id.* at 671. A police officer activated his siren after following Alford's truck for a distance; Alford responded by turning off the interstate highway and into the back of a mobile home park. *Id.* When Alford did not heed the officer's request to get out of the truck, the officer pulled Alford out of the truck; placed him on the ground; handcuffed him; and called for back-up. *Id.* When back-up arrived six or seven minutes later, Alford was still in handcuffs and the arriving officer asked whether he had been drinking. *Id.* at 672. Alford admitted drinking six beers. *Id.*

The Fort Worth Court of Appeals held that Alford was in custody at the time he admitted to drinking six beers. The court emphasized that by removing Alford from the vehicle, placing him on the ground, handcuffing him, and holding him for back-up officers, the circumstances were elevated beyond those of an ordinary traffic stop. *Id.* at 673.

*Alford* is distinguishable because Alford was physically removed from his truck, placed on the ground, and handcuffed following a traffic stop. *Id.* at 671. Alford then remained handcuffed for six or seven minutes until another officer arrived on the scene who questioned him about his alcohol consumption. *Id*. at 671–72. In *Alford*, as in *Ramirez*, no investigation took place, and Alford was "subjected to treatment that resulted in his being in custody for practical purposes." *Id.* at 673.

The facts here are closer to *Balentine v. State*, 71 S.W.3d at 767. Balentine was placed in handcuffs and escorted to a patrol car while being questioned. Before placing Balentine in the patrol car, an officer frisked him and did not find

13

any weapons. *Id.* Despite finding no weapons, the officer handcuffed Balentine, placed him in a patrol car, and drove Balentine to a friend's home. *Id.* Before being released Balentine was patted down a second time and handcuffed for officer safety despite the fact that the officer did not find any weapons. *Id.* The Court of Criminal Appeals concluded that Balentine's detention was not an arrest based on the circumstances surrounding the investigation. *Id.* at 771. The court determined that the detention was temporary and that the handcuffs and placement in the patrol car did not elevate the temporary detention to an arrest because the officer encountered Balentine in an area where gunfire had been reported; Balentine exhibited suspicious behavior; and the restraint was necessary for officer safety while investigating Balentine's possible involvement in gunfire. *Id.* at 771.

We conclude that Little's investigative detention of appellant was reasonable and justified under the circumstances and did not constitute an unlawful arrest. The trial court did not abuse its discretion in denying the motion to suppress appellant's oral statement. We overrule appellant's second issue.

We affirm the trial court's judgment.


/s/  William J. Boyce
    Justice



Panel consists of Justices Boyce, Jamison, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).