**Affirmed and Memorandum Opinion filed December 23, 2014.**



In the

# Fourteenth Court of Appeals

## NO. 14-13-00735-CR

### CORDARRELL CHARLES CARROLL, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Cause No. 69718**

## M E M O R A N D U M   O P I N I O N

Appellant Cordarrell Charles Carroll was convicted by a jury of four counts of aggravated robbery.[1] On appeal, appellant presents three issues: (1) whether the trial court abused its discretion by refusing his motion for continuance in connection with an absent witness; (2) whether trial counsel rendered ineffective assistance of counsel; and (3) whether the trial court abused its discretion by denying his motion to suppress. We affirm.

---

[1] *See* Tex. Penal Code §§ 29.02(a)(2), 29.03(a)(2) (West 2013).

# I.     FACTUAL AND PROCEDURAL BACKGROUND

Appellant was indicted for four counts of aggravated robbery all arising out of the same criminal episode, alleged to have been committed on or about December 13, 2012. The indictments charged that appellant in the course of committing theft of property owned by Wendy's, and with intent to obtain or maintain control of said property, intentionally or knowingly placed four individual Wendy's employees in fear of imminent bodily injury or death, and did use or exhibit a deadly weapon, namely, a firearm capable of causing death or serious bodily injury. The State provided notice of its intent to prove two prior felony convictions of appellant.

At trial, all four Wendy's employees, including the manager on duty, testified. At about 9:00 p.m., on December 13, 2012, two black men entered the Wendy's restaurant on North Main Street, in Pearland, Brazoria County, Texas, wearing masks, hoodies, and gloves. The men were armed with semiautomatic pistols. One of the men, who was carrying a large, blue duffle bag, ordered the manager to open the cash registers and safe while the other man held the three employees at gunpoint against a wall at the rear of the restaurant. After they placed the money—approximately $5,000—in the duffle bag, the men exited through the back door. The manager called the police. A Pearland police officer responded to the scene. The Pearland police department sent out a teletype notifying other agencies of the incident, along with a description of the suspects, what was taken, and the suspects' vehicle.

At approximately 11:09 p.m. that same evening, a woman at her home in Richmond, Fort Bend County, Texas, called the police to report two black males dressed in black—one sitting in a parked light-colored BMW she did not recognize and the other walking along the side of her house, who opened her back gate. Deputy Stevenson with the Fort Bend County Sheriff's Office responded to the call about ten minutes later. In a dimly-lit area, Stevenson located a silver BMW with two black

2

males.  The driver was wearing black sweats and a black hoodie.  The passenger was wearing coveralls and a dark blue hoodie.  When Stevenson asked the men what they were doing at that location, they responded they were visiting a friend.  When asked where their friend lived, they responded that they "didn't know" and could not give the friend's name or address.  Stevenson ordered the driver, identified as Rennie Battist, to exit the vehicle.  Stevenson ordered the passenger, identified as appellant, to put his hands on the roof.  As the driver exited, Stevenson noticed a large, blue duffle bag on the driver's side floorboard.  Stevenson also noticed thin, black finger gloves sticking out from the driver's hoodie pocket.  For his safety, Stevenson handcuffed Battist and leaned him over the hood of the patrol car.

When Stevenson looked back at the BMW, the passenger, identified as appellant, was making a "furtive movement," "digging" in the backseat area.  Stevenson drew his weapon and again ordered appellant to put his hands on the roof.  Stevenson called for backup.  Stevenson asked Battist if there were any weapons in the car—Battist replied that there was a gun in the car.  Additional officers arrived, and removed appellant from the BMW and handcuffed him.

Two semiautomatic pistols were recovered from the vehicle: one from under the floor mat on the front passenger side and the other from the floor behind the driver's seat.  The pistol located behind the driver's seat was visible, and was "chambered and ready to fire."  Officers also recovered rifle ammunition on the front passenger floorboard. Stevenson opened the trunk and recovered a rifle.  Also recovered from the trunk were a plastic bank deposit bag, containing bundles of cash and a coin tray with bank-rolled change, and a bank slip with "Wendy's Pearland" written on it.  The officers contacted Pearland police regarding any recent burglaries or robberies, and Pearland officers responded to the scene in Fort Bend.  Pearland officers arrested appellant and Battist.

3

On the first day of trial, appellant filed a verified motion for continuance, arguing that a continuance was necessary in order to investigate a previously unknown material witness, a Calvin Davis, who allegedly had been taken to the hospital. The trial court denied the motion for continuance. An attempt to serve a subpoena on the witness failed. On the second day of trial, after the State rested, appellant reurged the motion for continuance. Appellant called Battist to testify. Battist testified that he had pleaded guilty to four counts of "robbing Wendy's in Pearland." Battist also stated that his cousin, appellant, did not participate in the Wendy's robbery. Battist testified that a "Cal Davis"—appellant's friend—helped him instead. On the third day of trial, appellant's trial counsel informed the trial court that she still had not located the witness, and appellant rested.

In addition, appellant filed a motion to suppress all the evidence seized from the BMW. The trial court carried the motion to suppress with the trial and held a hearing outside the presence of the jury. The State argued that appellant had no standing with regard to contesting the search of the BMW and, in any event, the automobile could be searched without a warrant based on probable cause. Appellant maintained that he had an expectation of privacy in the vehicle, despite not being the owner or driver. The trial court denied the motion.

The jury found appellant guilty as charged on all four counts. Appellant pleaded true to the two prior felony convictions, and the jury assessed punishment at 45 years' confinement for each offense. The trial court imposed the assessed sentences to run concurrently. Appellant timely appealed.

## II.    ANALYSIS

### A. The trial court did not abuse its discretion in denying the continuance.

Appellant argues that the trial court abused its discretion by denying his requests

4

for additional time to investigate and secure the presence of a material witness, and that he was harmed by the court's decision.

The State responds even where a defendant makes the requisite showings that he exercised diligence to procure the absent witness, did not contribute to the witness's absence, the motion is not for made for purposes of delay, and what material facts the witness expects to prove,[2] a trial court has discretion to deny the continuance where the record does not indicate a probability that the witness could have been secured by a postponement. *See Rodriguez v. State*, 21 S.W.3d 562, 565–66 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (citing *Varela v. State*, 561 S.W.2d 186, 191 (Tex. Crim. App. 1978)).

We agree that *Rodriguez* is instructive here. In *Rodriguez*, this court indicated that uncertainty surrounding the witness's availability to testify at trial constitutes a sufficient ground for the denial of a motion for continuance. *Id.* at 566. There, at the time the appellant requested the continuance, he had no knowledge of the witness's whereabouts, the witness's brother did not know where she was, and trial counsel's attempts to locate her had proven fruitless. *Id.* This court also noted that the appellant was able to present the missing witness's grand jury testimony in support of the appellant's claim of self-defense. *Id.* Ultimately, we concluded that the trial court had not abused its discretion. *Id.*

Likewise, appellant has not presented "compelling grounds for a continuance" here. *See id.* The day before trial, this witness apparently informed appellant's trial counsel that he was the person who participated in the Wendy's robbery with Battist. All appellant knew at the time of the initial request was that the missing witness reportedly had been taken to an unknown hospital for an unknown health issue.

---

[2] *See* Tex. Code Crim. Proc. art. 29.03 (West 2013); *Harrison v. State*, 187 S.W.3d 429, 434 (Tex. Crim. App. 2005).

Subsequent efforts to locate the witness and to serve a subpoena at the address he provided failed. In addition, appellant's trial counsel received information that the witness had changed his mind, did not want to be charged with the crime, and was not going to appear. Moreover, although not from the absent witness, appellant was able to present evidence related to his defensive theory that "Cal" Davis instead of appellant had committed the crime with Battist through the testimony of Battist himself.

Given the level of uncertainty of the absent witness's whereabouts and availability, we cannot say that the trial court abused its discretion in denying appellant's motion for continuance. *See id.*; *see also Varela*, 561 S.W.2d at 191 (noting motion also may be denied where continuance due to absence of witness would delay trial indefinitely).

We overrule appellant's first issue.

## B. Appellant has not demonstrated ineffective assistance of counsel.[3]

Appellant argues multiple ways in which his trial counsel rendered ineffective assistance during trial: due to her failures and lack of diligence in connection with the motion for continuance; her failure to object when the State asked Stevenson about whether appellant was telling the truth in his explanation for how he was dressed; and her failure to move for a mistrial after the Wendy's manager testified in the guilt/innocence phase as to long-term effects from the robbery. Appellant also contends that trial counsel's errors on the whole had the cumulative effect of depriving him of a fair trial.

To prevail on an ineffective assistance of counsel claim, appellant must show by a

---

[3] Appellant relies on both the Sixth Amendment and the Texas Constitution. Because the Texas Court of Criminal Appeals has held that the Texas Constitution does not impose a higher standard than the Sixth Amendment, we will analyze appellant's claim using Sixth Amendment case law. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986).

6

preponderance of the evidence that (1) trial counsel's performance fell below the objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). For the performance inquiry, we consider all of the circumstances, with a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010) (citing *Strickland*, 466 U.S. at 688–89). For the prejudice inquiry, a reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* at 894 (citing *Strickland*, 466 U.S. at 694). Failure to establish either deficient performance or prejudice will defeat a claim of ineffectiveness. *Id.* at 893.

Our judicial scrutiny of trial counsel's performance must be highly deferential. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). We also keep in mind that generally on direct appeal the record will be undeveloped and will not provide an explanation for trial counsel's alleged failures or omissions. *Id.* at 110–11 (citing *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001)); *see also Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) ("Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."). Moreover, where trial counsel has not had an opportunity to explain his conduct, we should not find deficient performance unless the challenged conduct is "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)); *Darkins v. State*, 430 S.W.3d 559, 569 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

**1. Counsel's alleged failures with regard to the motion for continuance, diligence, and investigation**

Appellant first argues essentially that trial counsel failed to comply with Texas Code of Criminal Procedure articles 29.06[4] and 29.07[5] such that she rendered deficient performance. Appellant also asserts that his trial counsel failed to exercise due diligence with regard to her efforts to locate and procure the absent witness. Moreover, appellant contends that trial counsel failed to properly investigate and interview the witness.

Appellant points to the record, which indicates that trial counsel apparently did not speak to or interview Cal Davis until the day prior to trial and did not attempt to subpoena him until trial was underway. The State counters that there is nothing in the record indicating trial counsel was deficient in her investigation of or diligence in seeking to procure the missing witness.

Particularly without allowing for trial counsel's explanation of the motives behind her actions, the record may reflect as much investigation and diligence, as well as timely and persistent efforts with regard to the motion for continuance, as reasonably possible under the circumstances. Moreover, the record reflects that trial counsel elicited testimony from Battist at trial regarding Cal Davis's alleged participation in the robbery. In other words, the record does not reveal that trial counsel engaged in any "outrageous

---

[4] Article 29.06 provides what information counsel must include in her first motion for continuance based on an absent witness, including the name of the witness and his residence, if known, or that such residence is not known; the diligence used to procedure his attendance; the facts expected to be proved; that the witness is not absent by the procurement or consent of the defendant; that the motion is not made for delay; and that there is no reasonable expectation attendance of the witness can be secured during the present term of the court by a postponement of the trial to some future day of said term. Tex. Code Crim. Proc. art. 29.06 (West 2013).

[5] Article 29.07 provides what additional information must be included in subsequent motions: that the testimony cannot be procured from any other source known to the defendant and that the defendant has a reasonable expectation of procuring the same at the next term of the court. Tex. Code Crim. Proc. art. 29.07 (West 2013).

conduct," *see Goodspeed*, 187 S.W.3d at 392, such as deliberately ignoring available information about the witness earlier during trial preparation or failing to follow up on any such helpful information once received. We cannot conclude appellant has met his burden to rebut the strong presumption that trial counsel's actions were reasonably professional and motivated by sound trial strategy. *See Strickland*, 466 U.S. at 688–89; *Thompson*, 9.S.W.3d at 813–14.

## 2. Counsel's failure to object to Stevenson's comment on appellant's truthfulness

Next, appellant argues Stevenson's testimony "based on his training and experience" that he did not believe appellant's explanation for his manner of dress the night of December 13, 2012—he had been working construction all day—was not permissible. It did not speak to appellant's general reputation for truthfulness, *see* Tex. R. Evid. 608, but rather was a direct opinion as to the truthfulness of appellant's statement. As such, it did not constitute admissible expert testimony and invaded the sole province of the jury to determine truthfulness. *See id*. 702; *Schultz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997); *Yount v. State*, 872 S.W.2d 706, 710–11 (Tex. Crim. App. 1993). Therefore, according to appellant, trial counsel's failure to object to such inadmissible testimony constituted deficient performance. The State responds appellant has not shown that prejudice resulted from Stevenson's testimony on his truthfulness.

This court has indicated a police officer's statement regarding his general disbelief regarding a defendant's insistence that he was not involved in a crime invades the province of the jury such that trial counsel properly should "both object to this testimony and request an instruction to disregard [the officer's] statement." *Salinas v. State*, 368 S.W.3d 550, 555 (Tex. App.—Houston [14th Dist.] 2011) (citing *Yount*, 872 S.W.2d at 710–11), *aff'd*, 369 S.W.3d 176 (Tex. Crim. App. 2012), *aff'd*, 133 S. Ct.

2174, 186 L. Ed. 2d 376 (2013).

In *Salinas*, after presuming without deciding that the failure to object satisfied the first prong of *Strickland*, we considered the prejudice prong. 368 S.W.3d at 555. However, here, appellant fails to advance any argument, much less affirmative proof, as to how counsel's actions prejudiced him. *See id.* at 554 (citing *Thompson*, 9 S.W.3d at 812). We note on cross-examination trial counsel elicited testimony from Stevenson that he was not aware of what kind of coveralls were worn in chemical plants, and that he did not ask appellant why he had only the coveralls on and did not have any construction equipment with him.

Moreover, in *Salinas*, we specifically noted the difficulty of showing prejudice where the case does not hinge on a single witness's credibility. *Id.* at 556 (but recognizing distinct context of sex crimes involving children). Here, trial counsel presented direct evidence in a clear attempt to corroborate appellant's provided explanation for his clothing. A defense witness testified that he had worked with appellant earlier that afternoon and evening at an inspection job, which involved spraying chemicals, and that appellant likely was wearing coveralls. Battist also testified he picked up appellant that night right after appellant got off from work. We cannot conclude appellant has shown a reasonable probability that, but for trial counsel's singular failure to object, the result of the trial would have been different. *See id.* at 555 (citing *Strickland*, 466 U.S. at 687).

### 3. Counsel's failure to request a mistrial

Appellant also contends that trial counsel performed ineffectively by failing to move for a mistrial after the State elicited testimony from the Wendy's manager regarding personal long-term effects from the robbery, such as nausea and headaches. Although trial counsel had her objection sustained and was granted an instruction to disregard, appellant asserts she rendered ineffective assistance by failing to preserve

10

error by not moving for a mistrial. The State responds that appellant has not shown a mistrial would have been granted.

The failure to request a mistrial can be termed an act of ineffective assistance of counsel only if a mistrial should have been granted. *See Thomas v. State*, 445 S.W.3d 201, 210 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (citing *Weinn v. State*, 281 S.W.3d 633, 641 (Tex. App.—Amarillo 2009), *aff'd*, 326 S.W.3d 189 (Tex. Crim. App. 2010)). The decision to grant or deny a mistrial is within the sound discretion of the trial court and will be upheld unless it falls outside the zone of reasonable disagreement. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). A mistrial is an appropriate remedy only in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors, where the expenditure of further time and expense would be wasteful and futile. *Id.* Further, where, as here, the trial court instructs the jury to disregard testimony, we presume that the jury will follow such instruction and that such instruction sufficiently cures improper evidence. *See Corwin v. State*, 870 S.W.2d 23, 37 (Tex. Crim. App. 1993).

Appellant provides no argument as to why, and on this record we cannot say, that the denial of a motion for mistrial would have constituted an abuse of discretion by the trial court. Accordingly, trial counsel's failure to request a mistrial was not an act of ineffective assistance of counsel. *See Weinn*, 281 S.W.3d at 642.

Appellant has failed to present sufficient proof of trial counsel's ineffective assistance with regard to each individually advanced error. Nor, taken as a whole, does trial counsel's performance compel us to find cumulative error here. *Cf. Ex parte Welborn*, 785 S.W.2d 391, 396 (Tex. Crim. App. 1990).

We overrule appellant's second issue.

**C. The trial court did not abuse its discretion in denying appellant's motion to suppress.**

Finally, appellant contends that the trial court abused its discretion by denying his motion to suppress. In particular, appellant asserts the trial court should have suppressed "evidence of a robbery that was located in the trunk of a vehicle in which the defendant was a passenger." At the suppression hearing, the State argued, first, that appellant as a mere passenger lacked standing to contest the search and, second, that the officers could search the entire vehicle based on probable cause. The trial court denied appellant's motion without specifying any grounds.

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005); *Thomas v. State*, 297 S.W.3d 458, 460 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). When reviewing a trial court's ruling on a motion to suppress, we view all evidence in the light most favorable to the ruling. *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). If the trial court does not make explicit findings of fact, we presume factual findings that would support the court's ruling if the record and reasonable inferences could support those implied findings. *Id.*

When reviewing a trial court's denial of a motion to suppress, we afford almost complete deference to the court's determination of historical facts, especially when its implicit factfinding is based on an evaluation of credibility and demeanor. *Id.* While the party which prevailed in the trial court is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence, we review de novo the legal significance of those facts. *See id.* "If supported by the record, a trial court's ruling on a motion to suppress will not be overturned." *LeCourias v. State*, 341 S.W.3d 483, 487 (Tex. App.—Houston [14th Dist.] 2011, no pet.). We will sustain the trial court's decision if we conclude it is correct on any theory of law

12

applicable to the case. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000).

## 1. Appellant's standing

A person who complains that a search is illegal because of evidence obtained by a search of a third person's premises or property has not had any of his personal Fourth Amendment rights violated. *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978); *Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000). A defendant who asserts a Fourth Amendment claim has the initial burden to establish, as an element of that claim, that he has standing. *State v. Klima*, 934 S.W.2d 109, 111 (Tex. Crim. App. 1996). Here, to demonstrate standing to challenge the search of Battist's vehicle, appellant must show that he personally had a legitimate expectation of privacy in the area searched. *See Klima*, 934 S.W.2d at 111; *Flores v. State*, 871 S.W.2d 714, 719 (Tex. Crim. App. 1993); *Trinh v. State*, 974 S.W.2d 872, 874 (Tex. App.—Houston [14th Dis.] 1998, no pet.); *see also Matthews v. State*, 431 S.W.3d 596, 606 (Tex. Crim. App. 2014) (accused "must show (1) that he exhibited an actual subjective expectation of privacy in the place invaded (i.e., a genuine intention to preserve something as private) and (2) that society is prepared to recognize that expectation of privacy as objectively reasonable" (internal quotation marks and footnotes omitted)). We review the legal issue of standing de novo although we defer to the trial court's factual findings and view them in the light most favorable to the ruling. *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004).

The record reflects that Battist was the owner and driver of the BMW, and appellant was the passenger. The record does not reflect appellant was borrowing the vehicle.[6] However, appellant maintains that his expectation of privacy in Battist's vehicle derived from his placing a personal item, his wallet, inside the glove box.

Appellant relies on *Goodwin v. State*, where the Court of Criminal Appeals

---

[6] *Cf. Matthews v. State*, 431 S.W.3d 596, 607–08 (Tex. Crim. App. 2014) (generally, person who borrows car with owner's permission has reasonable expectation of privacy in that car).

indicated that a passenger had standing. *See* 799 S.W.2d 719, 725 n.2 (Tex. Crim. App. 1990), *superseded on other grounds*, *Long v. State*, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991). *Goodwin* does not control here. Aside from standing being presumed, so not being directly at issue in the case, the appellant passenger there laid claim to ownership of the precise piece of luggage or gym bag searched and seized from the vehicle, from which was recovered the firearm determined to be the capital murder weapon. *Id.* at 723–25 & n.2. The *Goodwin* Court also considered that the bag was found at the appellant's feet. *Id.* at 725 n.2.

Here, appellant does not have a possessory interest in the vehicle by virtue of standing in the owner's shoes, as a nonowner driving alone would. *See State v. Allen*, 53 S.W.3d 731, 733 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Moreover, when the owner is present, as here, it is the owner's right to grant or deny access to any part of the car to a nonowner or the police. *See id.* (reversing suppression order where nonowner defendant was driving and owner was passenger, noting that both nonowner passengers and drivers would have no legitimate expectation of privacy with respect to car's trunk where owner present).

Nor does appellant claim any possessory interest in any container from which inculpatory evidence was seized or in any of that seized evidence. To the contrary, appellant's defense was not being involved in the robbery at all, so there is no evidence appellant claimed an interest in the firearms used and the stolen money. *See Trinh*, 974 S.W.2d at 874 (noting trial defense was shotgun seized from trunk did not belong to passenger appellant); *Kelley v. State*, 807 S.W.2d 810, 815 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (concluding passenger appellant lacked standing where there was no evidence he claimed interest in cocaine seized).

To the extent appellant claims that keeping his wallet in the closed glove box gave him a "repository" interest, the vehicle owner Battist likewise used it as a

14

repository by storing his own wallet there. Plus, the glove box also contained a magazine for the pistol located behind the driver's seat, from which appellant tries to distance himself. Therefore, any such possessory interest in the glove box would not be personal to appellant. Nor would any existing possessory interest reasonably extend as far as the trunk where appellant did not claim to have any personal property in the trunk or in any container inside the trunk. *See Allen*, 53 S.W.3d at 733 (discussing federal cases); *Trinh*, 974 S.W.2d at 874.

Under these circumstances, we cannot conclude appellant has met his burden to establish a legitimate expectation of privacy such that he would have standing to contest the search of the BMW, including the trunk. *See Allen*, 53 S.W.3d at 733; *Kelley*, 807 S.W.2d at 815.

## 2. Appellant's own Fourth Amendment rights

A mere passenger has standing to challenge the search of a vehicle in which he was riding if the search resulted from an infringement of his own Fourth Amendment rights. *Trinh*, 974 S.W.2d at 874; *see Lewis v. State*, 664 S.W.2d 345, 348 (Tex. Crim. App. 1984) ("[A] mere passenger can challenge the search of the automobile in which he is riding if the search resulted from an infringement (such as an illegal detention) of the *passenger's* Fourth Amendment rights." (emphasis in orig.)).

The State insists that appellant made no such challenge to the officer's initial detention of the vehicle and its occupants. We note that neither appellant nor the State spent significant time, if any, during the suppression hearing on the issue of reasonable suspicion for the initial detention. Rather, the argument primarily advanced by appellant in the trial court and here on appeal is that the vehicle search itself was improper because it was not based on probable cause. This is consistent with appellant's focus in the hearing on Stevenson's decision to proceed to search the vehicle, particularly the trunk, and with the State's alternative position that the

15

automobile exception applied.

However, appellant advances a general argument in his brief that Stevenson did not have reasonable suspicion to detain the parked vehicle or its occupants. Appellant also argued in his written motion that the evidence from the BMW was seized as a result of an illegal detention.

In any event, the record reflects that appellant was initially detained without a warrant, and the burden shifted to the State to establish reasonable suspicion for his detention. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Considering the totality of the circumstances, we conclude that specific, articulable facts, combined with rational inferences drawn from those facts, supported Stevenson's reasonable suspicion to conduct the initial investigative detention of the BMW and its occupants, including appellant. *See Johnson v. State*, 444 S.W.3d 209, 213 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd); *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). Viewed in the light most favorable to the trial court's ruling, *see Garcia-Cantu*, 253 S.W.3d at 241, the evidence:

- raised unusual activity (the homeowner's recent call relaying information about two suspicious men, a suspicious vehicle, and possible criminal trespassing);

- provided a connection between the detainees and the unusual activity (two men and a car matching the general description by the caller were parked nearby); and

- indicated the unusual activity was somehow related to a crime (beyond the trespassing nature of the call, Stevenson was familiar with the subdivision which had a high call volume and increasing property crime rate, and the car was parked away from a streetlight at a late hour).

*See Johnson*, 444 S.W.3d at 215. Under these facts, Stevenson was justified by reasonable suspicion to conduct an investigative detention of the BMW and its

occupants. *See id.* Therefore, appellant "lacks standing to challenge the legality of the subsequent search." *See Trinh*, 974 S.W.2d at 875.

### 3. Search of vehicle pursuant to automobile exception

Even presuming appellant has standing with regard to the search of the BMW, an officer may conduct a warrantless search of an automobile if the officer has probable cause to believe the vehicle contains evidence of criminal activity under the automobile exception to the warrant requirement. *See Powell v. State*, 898 S.W.2d 821, 827–28 (Tex. Crim. App. 1994). Police officers have the right to search an entire vehicle when they have probable cause to believe there is contraband in the vehicle but do not know where it is located. *See United States v. Ross*, 456 U.S. 798, 821–24 (1982); *Miller v. State*, 11 S.W.3d 345, 348 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *Harper v. State*, 704 S.W.2d 546, 548 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd). Such a search may extend not only to closed containers within the vehicle capable of containing the object of probable cause, but also to the car's trunk or glove box. *See Wyoming v. Houghton*, 526 U.S. 295, 302 (1999) (if officer has probable cause to search for contraband "in" the car, reaches both personal belongings and containers attached to the car); *Ross*, 456 U.S. at 823–25. The justifications[7] to conduct a warrantless search of a vehicle do not vanish once the vehicle has been immobilized, nor do they depend on the likelihood that it would be driven away or tampered with during the period required to obtain a warrant. *See Michigan v. Thomas*, 458 U.S. 259, 261 (1982); *Keehn v. State*, 279 S.W.3d 330, 335–36 (Tex. Crim. App. 2009); *State v. Guzman*, 959 S.W.2d 631, 633 n.3 (Tex. Crim. App. 1998). Nor is there a separate requirement of exigent circumstances beyond probable cause. *Guzman*, 959 S.W.2d 631, 633–34; *see*

---

[7] The justifications for a warrantless search of an automobile based on probable cause include both the mobile nature of vehicles and a reduced expectation of privacy in vehicles. *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009); *Liffick v. State,* 167 S.W.3d 518, 521 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

*Dixon v. State*, 206 S.W.3d 613, 619 n.25 (Tex. Crim. App. 2006) ("A finding of probable cause alone satisfies the automobile exception to the Fourth Amendment warrant requirement." (internal quotation marks omitted)).

Probable cause exists when, under the totality of the circumstances, there is a "fair probability" that contraband or evidence of a crime will be found in a particular location. *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007). When the facts and circumstances within the knowledge of the officer on the scene and of which he has reasonably trustworthy information would lead a man of reasonable caution and prudence to believe that he will find the instrumentality of a crime or evidence pertaining to a crime, probable cause exists. *Barber v. State*, 611 S.W.2d 67, 68 (Tex. Crim. App. 1981). We take into consideration the training, knowledge, and experience of law enforcement officials. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). We also use "commonsense judgments and inferences about human behavior." *State v. Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011). Although probable cause requires more than mere suspicion, it requires far less than is needed to support a conviction or even a finding by a preponderance of the evidence. *Middleton v. State*, 125 S.W.3d 450, 460 (Tex. Crim. App. 2003).

Here, the BMW's occupants did not dispel the officer's initial suspicion of them when they could not provide a plausible explanation for what they were doing in that neighborhood at the time. Stevenson also noted they were dressed oddly for what he described as not "that cold" of weather. Nor did Stevenson observe any construction-related gear to support the passenger's explanation for his jumpsuit. Stevenson, who was alone, decided he wanted to continue his investigation of the men separately and ordered the driver out, handcuffing him for officer safety. *See Rhodes v. State*, 945 S.W.2d 115, 117–18 (Tex. Crim. App. 1997). As the driver exited, Stevenson noted there was an empty duffle bag at the driver's feet and that the driver had finger gloves in

his hoodie pocket. In Stevenson's training and experience, particularly with property crimes, burglars wear dark clothing at night for concealment and wear fitting gloves to allow for dexterity without leaving fingerprints.

In the course of handcuffing the driver, Stevenson noticed that appellant was not obeying Stevenson's command for appellant to keep his hands on the roof and was "digging" in the backseat. Stevenson was "spooked" as he did not know whether appellant was trying to "grab" or "hide" something like a weapon, or "conceal" evidence. After ordering appellant at gunpoint to re-place his hands on the roof, Stevenson called for backup, then asked the driver whether there were weapons in the car. The driver answered yes, there was a gun, but indicated he did not know where it was located. At this point, in addition to the other facts upon which the occupants' detention was based, Stevenson was aware that there was a weapon somewhere in the vehicle and that appellant had been watching the officer while reaching for something in the backseat and making "furtive movements in the vehicle." A subsequent search of the BMW uncovered two loaded handguns, an additional magazine for one of the handguns, a rifle and ammunition, and the various items and money taken from the Pearland Wendy's.

The record reflects that Stevenson was responding to a suspicious persons/vehicle and trespassing call and had not been satisfied with the occupants' explanation for being where they were. Stevenson was suspicious of the occupants' manner of dress, which was consistent with criminal activity such as burglary. As the detention progressed, appellant failed to keep his hands where he was commanded to and was observed reaching into the back of the vehicle. The record further reflects Stevenson received clear information from the driver that there was a gun in the car but did not know where. Based on the totality of the circumstances, in which a trained officer conducting an investigation at the scene personally observed both occupants' specific behavior, we

conclude that Stevenson developed probable cause to believe an illegal weapon could be found somewhere in the BMW.

In this case, the automobile exception applies and the officers had probable cause to search the vehicle and its contents, including the trunk, where a weapon may have been found.[8] *See Harper,* 704 S.W.2d at 548 ("The decision of the officer is supported by the theory of law that they had probable cause to open the briefcase without a warrant because they had knowledge that there was a weapon located somewhere in the car."). The trial court did not abuse its discretion by denying appellant's motion to suppress the evidence obtained from the vehicle, in particular, the trunk. *See Swain*, 181 S.W.3d at 365; *Thomas*, 297 S.W.3d at 460.

We overrule appellant's third issue.[9]

---

[8] Appellant emphasizes that at the point Stevenson decided to pop open the trunk, the officers already had located not just one but two semiautomatic weapons, as well as various ammunition in the BMW's main compartment, the implication being that there was no reason to continue the warrantless search. However, appellant points to, and we have located, no case law that indicates the authority to search the entire vehicle where contraband or evidence of a crime may be found ceases as soon as any inculpatory evidence or contraband is located. Moreover, no matter Stevenson's explanation for continuing the search into the trunk, the officers had authority under the automobile exception. *See Harper*, 704 S.W.2d at 548 ("While none of the officers articulated that the reason they opened the case was because they were looking for a weapon, the mere fact that they did not give the right reason is not controlling.").

[9] Appellant also argues that the search of the BMW was improper because search incident to arrest is unreasonable if it occurs after the person who is arrested has been secured and cannot access the vehicle, relying on *Arizona v. Gant*, 556 U.S. 332 (2009). However, the *Gant* Court specifically mentioned its holding did not disturb the longstanding rule that, if probable cause exists that a vehicle contains evidence of criminal activity relevant to any offense, then police may search any area of the vehicle where that evidence might be found. *See id.* at 347 (citing *Ross,* 456 U.S. at 820-21); *Barnes v. State*, 424 S.W.3d 218, 225 (Tex. App.—Amarillo 2014, no pet.) ("But *Gant* did not diminish the reach of the automobile exception.").

## III. CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/    Marc W. Brown
        Justice

Panel consists of Justices McCally, Brown, and Wise.
Do Not Publish — TEX. R. APP. P. 47.2(b).